UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) | |
| v. | ) ) | Criminal Action No. 08-334 (RCL) |
| CHARLES E. COUGHLIN,<br>Defendant. | ) ) ) ) ) | |

## MEMORANDUM OPINION

Before the Court is defendant's Motion [159] for a new trial and Motion for a judgment of acquittal. Upon consideration of the defendant's Motion, the government's response [162], the defendant's reply [164], the applicable law, and the entire record in this case, the Court will deny defendant's Motion for a new trial and Motion for a judgment of acquittal for the reasons set forth below.

### I. BACKGROUND

#### A. Coughlin's September 11th Victim Compensation Fund Claim

Defendant Charles Coughlin, a United States naval officer, was working at the Pentagon on September 11, 2001, when terrorists crashed a hijacked airplane into the building just seventy-five feet from his desk. In December 2003, Coughlin submitted a claim to the September 11th Victim Compensation Fund ("VCF"), which Congress created to compensate people who were injured in the attack. He claimed that the crash caused the ceiling over his head to collapse, that flying debris hit him, and that he struck his head while rescuing people at the disaster site. Coughlin's submission to the VCF claimed that Coughlin's 9/11 injuries caused him severe and permanent disabilities, including neck, head, and upper back pain; restricted

1

range of motion; and weakness and numbness in his left arm and hand. Coughlin said that his injuries prevented him from playing certain sports and that his medical needs forced him to take time off from work. Rather than completing the household chores as he had previously, Coughlin claimed that he had to pay others to do them and included a list of ten checks that he had written for such replacement services. However, his application sought $180,000 in compensation solely for personal injuries and not for replacement services or any other economic damages.

The VCF initially determined that Coughlin was ineligible for compensation because he had not sought medical treatment within the timeframe allowed by the Fund. On February 17, 2004, Coughlin appealed that determination, explaining that delay and asking for a waiver of ineligibility that was available to rescue workers. On February 20 and March 9, he submitted additional documentation to support his appeal, including certified medical records and a doctor's report. On April 14, the VCF reversed itself and informed Coughlin that he was eligible for a presumed award of $60,000 for noneconomic loss. The VCF advised Coughlin that he could either accept that amount or request an appeal hearing. On April 30, Coughlin's attorney mailed the VCF a letter requesting such a hearing.

At the May 13, 2004 appeal hearing, Coughlin's attorney told the hearing officer that Coughlin sought review because the $60,000 presumed award for noneconomic loss was "unfair and inadequate" and "provided no compensation for economic loss" to Coughlin. Coughlin's attorney further explained that there was a past, present, and future loss earnings component to Coughlin's claim that was never made initially. To support his appeal, Coughlin submitted ten new exhibits, nine of which addressed his economic loss claim. These included: a letter documenting salary he lost from taking off from work for doctor appointments and physical

therapy; thirty-two carbon copies of checks purportedly reflecting payments to others for household chores he could no longer perform himself; and a six-page schedule setting out and totaling his past and future economic claims.

On June 1, 2004 the VCF rendered its final decision, awarding Coughlin $331,034: $151,034 for economic damages and the entire $180,000 he had requested for noneconomic damages for his personal injury.

### B. First Trial

On October 31, 2008, a grand jury of the United States District Court for the District of Columbia returned an indictment charging the defendant with five counts of mail fraud, one count of filing a false, fictitious, and fraudulent claim, and one count of theft of government property, in violation of 18 U.S.C. §§ 1341, 287, and 641, respectively.

On March 10, 2009, a jury was sworn and trial proceedings began against the defendant with Judge Kennedy presiding. After a month-long trial and four days of jury deliberations, the jury acquitted the defendant of three counts of mail fraud (Counts Two, Three, and Five), but was unable to reach a verdict on the other two mail fraud counts (Counts One and Four), the count of filing a false, fictitious and fraudulent claim (Count Six), and the count of theft of government property (Count Seven). Judge Kennedy ordered a mistrial as to these deadlocked counts and scheduled the retrial for June 8, 2009.

### C. Second Trial

The government sought to retry Coughlin on all of the hung counts, but before the second trial was to begin the defendant filed a motion to bar retrial under the Double Jeopardy Clause. In his motion the defendant claimed that, in acquitting him on the three mail fraud counts, the jury necessarily made findings that barred retrial on the remaining counts. The defendant

acknowledged that the D.C. Circuit's holding in *United States v. White*, 936 F.2d 1326 (D.C. Cir. 1991), required the trial court to deny his motion, but noted that the Supreme Court had heard oral argument in *Yeager v. United States*, a case that might overturn this binding precedent. However, Judge Kennedy adhered to the rule in *White*—that where the same jury acquits a defendant on some charges and cannot reach a verdict as to others, the acquittals could not have been based on a fact upon which the hung counts depended—and denied the defendant's double jeopardy motion. On June 8, 2009, a new trial commenced on the two remaining mail fraud counts, as well as on the false claim and theft counts.

In the middle of the second trial, the Supreme Court issued its decision in *Yeager v. United States*, 129 S. Ct. 2360 (June 18, 2009). *Yeager* expressly overruled D.C. Circuit law with respect to the double jeopardy analysis to be applied when a jury acquits on some counts and fails to reach verdicts on others. Relying on *Yeager*, the defendant renewed his motion to bar retrial, which Judge Kennedy denied. The defendant then filed an interlocutory appeal with the D.C. Circuit and sought a stay of the trial proceedings pending appellate review. Judge Kennedy denied the defendant's request, concluding that it would be inappropriate to further delay the trial proceedings to permit the interlocutory appeal. The defendant sought an emergency stay from the D.C. Circuit, which was granted. Judge Kennedy eventually declared a mistrial.

**D. D.C. Circuit Decision**

The D.C. Circuit reversed Judge Kennedy's decision to allow the government to retry the defendant on the two remaining mail fraud counts and affirmed his decision allowing retrial of the false claim and theft counts. *United States v. Coughlin*, 610 F.3d 89 (D.C. Cir. 2010). In accordance with its decision, the D.C. Circuit directed the trial court to dismiss counts One and

4

Four of the indictment and remanded for further proceedings. The opinion made clear that because the jury had only acquitted defendant of pre-May 2004 mail fraud charges, the Double Jeopardy Clause did not bar another jury from convicting Coughlin under the indictment's narrower scheme for false claims and theft associated with his economic damages claims, which were all made after April 30, 2004. *Id.* at 110.

However, the D.C. Circuit also held that retrial was permissible on Counts Six and Seven because the government's theory at trial encompassed an alternative "narrower scheme theory." *Id.* at 101–02. To narrow the indictment to comply with the D.C. Circuit's mandate, the government retyped the indictment to reflect the narrower scheme that it sought to prove as to Counts Six and Seven. This retyped indictment indicated that at retrial the government's case would be temporally limited to the period of May 2004 to June 2004, the charges the government could seek to prove were related solely to the $151,034 claim for economic damages, the government conceded that the defendant sustained injuries on 9/11, and the alleged crime no longer included misrepresentations regarding "medical condition and physical abilities before and after September 11, 2001." *See* ECF No. 145

### E. Pretrial Rulings

On December 1, 2010, the government filed a notice of intent to introduce evidence in compliance with the appellate decision, in which it argued that it was not precluded from retrying defendant for making a false claim and theft of government property to obtain past and future economic compensation for damages he allegedly incurred as a result of the injury he sustained on September 11, 2001. *See* ECF No. 122. The government specifically noted its intent to offer defendant's post-9/11 medical records and continued participation in strenuous athletic activities to show that his claim for economic damages was fraudulently made. Defendant filed a motion

5

in limine, arguing that the acquittals precluded the government from presenting any evidence, including his medical records, challenging the cause and extent of his physical condition. *See* ECF No. 123. Defendant claimed that the athletic activity evidence was off limits because his inability to run or play sports was only presented to the VCF in support of his noneconomic award. Since the jury had decided that he lacked fraudulent intent with respect to the noneconomic award, the government should be precluded from offering his ability to run and play sports post-9/11 into evidence.

On January 27, 2011, Judge Kennedy ruled for the defendant, precluding the government from using medical records and athletic activity evidence to prove defendant's statements regarding "his description of . . . his cervical injuries, severity, and debilitating effects" to the VCF were fraudulently made. He also precluded the government from presenting any evidence or making any argument challenging defendant's proclaimed need for replacement services because he was physically capable of performing the services himself.

On February 1, 2011, defendant filed another motion in limine regarding the scope of the government's cross-examination of the defendant. *See* ECF No. 127. The same day, the government filed a motion asking Judge Kennedy to reconsider his January 27, 2011 evidentiary rulings. *See* ECF No. 128. On February 2, 2011, the case was reassigned by consent to Chief Judge Lamberth. *See* ECF No. 129.

On July 6, 2011, this Court issued an order granting in part and denying in part the government's motion for reconsideration. *See* ECF No. 140. This Court ruled that the Double Jeopardy Clause does not render the medical and athletic activities evidence inadmissible, even if the evidence was previously presented in a trial resulting in an acquittal, because "the relevance of evidence was governed by a lower standard of proof than that required for criminal

conviction." *Id.* at 16 (citing *United States v. Dowling*, 493 U.S. 342, 348–49 (1990)). Even assuming that the first jury rejected this evidence when it found that Coughlin lacked a fraudulent mail fraud scheme before May 2004, this Court explained that "*Dowling* teaches that the Double Jeopardy Clause wouldn't apply here because a jury might *reasonably* conclude that Coughlin exaggerated the severity of his 9/11 injury or lied to the VCF about his economic damages claim, even if it didn't believe *beyond a reasonable doubt* that he had a fraudulent mail fraud scheme before May." *Id.* at 17 (citing *Dowling*, 493 U.S. at 349; *United States v. Felix*, 503 U.S. 378, 386 (1992)).

This Court went on to find that even if the Double Jeopardy Clause did apply, the medical and athletic activities evidence would be admissible because defendant "failed to 'demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding.'" *Id.* at 13 (quoting *Dowling*, 493 U.S. at 350). This Court explained that "the jury could have thought that Coughlin lied to the VCF several times both before and after May 1; it just didn't think that those lies—at the time of the charged mailings—proved beyond a reasonable doubt that Coughlin had a fraudulent scheme." *Id.* at 21. And even if this Court "assume[d] that the first jury necessarily rejected one or more of the government's arguments based on the medical and athletic activities evidence, it would still be impossible to say with certainty which of those arguments it rejected." *Id.* This Court then held that the medical and athletic activities evidence is relevant under Federal Rule of Evidence 401 and that its probative value is not "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of delay, waste of time or needless presentation of cumulative evidence." Fed. R. Evid. 403.

The defendant also asked this Court to reconsider Judge Kennedy's prior decision to exclude the VCF's economic award process, analysis, and models from being admitted into evidence. This Court denied his request, citing Rule 403 for the proposition that "[i]f the jury were to see the valuation model without the critical context of the VCF officer's testimony to explain how those models were used to arrive at the final economic damages award figures, it would very likely fail to appreciate the role of the Special Master's discretion in the process." ECF No. 140, at 35. This Court also stated that the VCF officers' valuation tables are hearsay and are not admissible under the exception set out in Rule 803(8)(C)—which permits a defendant in a criminal case to admit into evidence "factual findings resulting from an investigation made pursuant to authority granted by law"—because "the valuation tables were tools used to make factual findings, not the findings themselves." ECF No. 140, at 35.

### F. Third Trial

A third trial on the narrowed Counts Six and Seven was held before this Court beginning on August 8, 2011. On August 29, the jury found the defendant guilty of both charges.

## II. LEGAL STANDARDS

### A. Motion for a New Trial

Under Rule 33 of the Federal Rules of Criminal Procedure, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The determination of whether to grant a motion for a new trial is 'committed to the sound discretion of the trial judge, [and is subject to reversal] only for abuse of discretion or misapplication of the law.'" *United States v. Gray*, 292 F. Supp. 2d 71, 76 (D.D.C. 2003) (quoting *United States v. Reese*, 561 F.2d 894, 902 (D.C. Cir. 1977)). The burden of demonstrating that a new trial would be "in the interest of justice" rests with the defendant."

*Reese*, 561 F.2d at 902. However, a new trial should be granted only if the error was not harmless and the error affected the defendant's substantial rights. *See United States v.* Walker, 899 F. Supp. 14, 15 (D.D.C. 1995) (quoting *United States v. Johnson*, 769 F. Supp. 389, 395–96 (D.D.C. 1991)). The inquiry is "whether the error itself had substantial influence." *Kotteakos v. United States*, 328 U.S. 750, 765 (1946). Pursuant to Federal Rule of Criminal Procedure 52(a), harmless error—that is, "any error, defect, irregularity or variance which does not affect substantial rights"—shall be disregarded. Fed. R. Crim. P. 52(a). "[T]he Government bears the burden of proving harmlessness." *United States v. Palmera Pineda*, 592 F.3d 199, 200 (D.C. Cir. 2010); *see Kotteakos*, 328 U.S. at 760.

### B. Motion for a Judgment of Acquittal

Under Rule 29(c) of the Federal Rules of Criminal Procedure, a defendant may renew a motion for a judgment of acquittal after a guilty verdict has been rendered. Fed. R. Crim. P. 29(c). Judgment of acquittal is warranted "only where there is no evidence upon which a reasonable mind might find guilt beyond a reasonable doubt." *United States v. Byfield*, 928 F.2d 1163, 1165 (D.C. Cir. 1991); *United States v. Hernandez*, 780 F.2d 113, 120 (D.C.Cir. 1980). The Court "must view the evidence in the light most favorable to the verdict, and must presume that the jury properly carried out its functions of evaluating the credibility of witnesses, finding the facts, and drawing justifiable inferences." *United States v. Campbell*, 702 F.2d 262, 264 (D.C. Cir. 1983); *see also United States v. Kayode*, 254 F.3d 204, 212–13 (D.C. Cir. 2001). The question for the Court is whether the evidence is sufficient for a rational juror to have found the defendant guilty. *See Kayode*, 254 F.3d at 212–13; *United States v. Harrington*, 108 F.3d 1460, 1464 (D.C. Cir. 1997). That is, the Court may grant a motion for judgment of acquittal only

when "a reasonable juror *must necessarily* have had a reasonable doubt as to the defendant's guilt." *United States v. Weisz*, 718 F.2d 413, 437 (D.C. Cir. 1983).

### III. ANALYSIS

#### A. Medical and Athletic Activities Evidence

##### 1. *Federal Rules of Evidence 401 and 403*

The defendant claims that the Court erred in admitting the medical and athletic activities under Federal Rules of Evidence 401 and 403. Rule 401 states that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "Evidence which is not relevant is not admissible." Fed. R. Evid. 402. After determining whether evidence is relevant, the court must conduct a balancing test under Rule 403 to determine whether that relevant evidence should be excluded on grounds of prejudice, confusion, or waste of time. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. The district court has broad discretion in ruling on evidentiary matters when "weigh[ing] the extent of potential prejudice against the probative force of relevant evidence." *Athridge v. Aetna Cas. & Sur. Co.*, 604 F.3d 625, 633 (D.C. Cir. 2010).

The medical and athletic activities evidence that the government offered at trial, including evidence regarding whether the defendant exaggerated the severity of his 9/11 injury in order to inflate his post-May 2004 economic damages claim, was relevant to prove that defendant filed a false VCF claim and stole government money when he sought compensation for economic damages that he did not incur and had no reason to believe he would incur in the

future. Specifically, the defendant's medical records and the testimony of several treating physicians were relevant to show the following regarding the defendant's economic damages claim: the defendant did not have medical appointments for his neck condition that required him to take time off from work; the defendant did not need to travel to Bethesda or Walter Reed to obtain treatment; there were many non-surgical options available to the defendant, such as medication, physical therapy, and chiropractic manipulation, that had effectively reduced his symptoms after each flare-up and thus indicated that his statements that he would ultimately require surgery were fraudulently made; the defendant made fraudulent statements when he told the VCF that the Navy neurosurgeon told him that he would definitely require surgery at some point; the defendant's 1998 symptoms did not go away entirely and he had additional flare-ups prior to 9/11, which he did not disclose to the VCF; and the defendant was not suffering as badly as he represented to the VCF, in light of his failure to undergo treatment for more than two years and the description he provided about his symptoms and medication use prior to his hip surgery. Moreover, evidence of the defendant's continued participation in athletic activities was relevant to show that despite sustaining an injury on 9/11, he could still do the household chores that he told the VCF he could no longer perform. These linkages demonstrate that the medical and athletic activities evidence offered by the government was relevant as a whole to the government's theory that the defendant exaggerated his injury to inflate his post-May 2004 economic damages claim that he made to the VCF.

Not only was the medical and athletic activities evidence relevant under Rule 401, but the probative value of this evidence was not "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence," rendering it admissible under

11

Rule 403. Fed. R. Evid. 403. Before trial, this Court addressed—and rejected—the defendant's contentions that this evidence should be excluded under Rule 403 as unfairly prejudicial, and the defendant has offered no new arguments based in the language of the Rule as to why the Court's prior ruling was erroneous. Instead, the defendant reads into the Rule 403 balancing test a "necessity" requirement, arguing that under Rule 403 the probative value of the medical and athletic activities evidence is outweighed by the fact that it is not "necessary" to the government's case. However, as the plain language of Rule 403 makes clear, necessity is not an element in the Rule 403 balancing test—meaning that the Court cannot, as the defendant requests, exclude the medical and athletic activities evidence under Rule 403 on the basis that it was not "necessary to the charges."[1] Def.'s Mot. at 12.

The defendant also argues that the government placed an unfairly disproportionate focus on the medical and athletic activities evidence that it presented at trial. However, once this Court properly found the evidence relevant under Rule 401 and admissible under Rule 403, it was the government's decision how to structure the case that it presented at trial. The emphasis placed on particular evidence at trial has no bearing whatsoever on its relevancy or admissibility.

### 2. *Federal Rule of Evidence 404(b)*

The defendant also argues that the medical and athletic activities evidence should have been treated as extrinsic to the charged crimes and thus analyzed under Rule 404(b) as "other crimes, wrongs or acts." In ruling on the defendant's pretrial motion regarding this evidence, the Court treated the evidence as intrinsic to the charged conduct and thus never reached a Rule

---

[1] The cases that the defendant cites in support of his contention that necessity is part of the Rule 403 balancing test are inapposite here because they all relate not to the Court's analysis under Rule 403, but to the Court's analysis of extrinsic evidence under Rule 404(b). *See, e.g.*, *Bradley v. United States*, 433 F.2d 1113 (D.C. Cir. 1969).

404(b) analysis, admitting it instead under Rule 401 after conducting the balancing test for relevance required by Rule 403.

Federal Rule of Evidence 404(b) prohibits "evidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." It permits such evidence for purposes unrelated to the defendant's character or propensity to commit crime, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). When the government plans to introduce "bad acts" evidence, it must, upon request by the accused, give notice of the "general nature of any such evidence." *Id.* Treating evidence as "inextricably intertwined" with the charged crime—rather than as extrinsic "evidence of other crimes, wrongs, or acts" under Rule 404(b)—"not only bypasses Rule 404(b) and its attendant notice requirement, but also carries the implicit finding that the evidence is admissible for all purposes notwithstanding its bearing on character, thus eliminating the defense's entitlement, upon request, to a jury instruction." *United States v. Bowie*, 232 F.3d 923, 928 (D.C. Cir. 2000).

The defendant argues that the Court should have treated the medical and athletic activities evidence as extrinsic evidence under Rule 404(b), thus entitling the defendant to ask the Court to instruct the jury that it could only use the evidence for particular purposes. But contrary to defendant's assertions, this Court properly treated the medical and athletic activities evidence as intrinsic to the charged crimes, rendering Rule 404(b) inapplicable. Rule 404(b) bars extrinsic evidence only when the evidence is offered solely to "prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). "Evidence that constitutes the very crime being prosecuted is not of that sort." *Bowie*, 232 F.3d 923. The medical and athletic activities evidence does not consist of prior "bad acts" that the government offered to

13

demonstrate the defendant's propensity to commit the charged crimes. Rather, this evidence is inextricably intertwined with the very acts that the defendant committed when he engaged in the behavior that constituted the charged crimes. This Court therefore properly treated the evidence as intrinsic rather than extrinsic, disposing of the need for the Court to have engaged in a 404(b) analysis.

Defendant simultaneously argues that the Court should have excluded the medical and athletic activities evidence altogether under Rule 404(b). Yet, "Rule 404(b) is a rule of inclusion rather than exclusion." *Bowie*, 232 F.3d at 929. Rule 404(b) functions as a mechanism for the admission of character evidence for particular purposes, not as a mechanism to exclude evidence. If the Court had admitted the medical and athletic activities evidence for a limited purpose under Rule 404(b), the proper course of conduct would be for the defendant to ask the Court to exclude the evidence under Rule 403. The defendant cannot, however, ask the Court to use Rule 404(b) as a means to exclude evidence altogether unless the government had offered evidence of other crimes, wrongs, or acts "to prove the character of [the defendant] in order to show action in conformity therewith," which it did not. Fed. R. Evid. 404(b).

### 3. *Double Jeopardy*

The defendant challenges this Court's prior determination that the Double Jeopardy Clause did not preclude the government from introducing the medical and athletic activities evidence at the third trial. However, as he offers no new arguments to persuade the Court to reconsider this ruling, the Court finds that its prior decision stands.

### B. Testimony Regarding Defendant's 9/11 Injury

Under the narrowed indictment, at retrial the government was permitted to challenge the extent of the defendant's 9/11 injuries, but was prohibited from arguing that the defendant was

14

not injured at all on 9/11. *See* ECF No. 141, at 32. At retrial, the government called Elizabeth Cantwell to the stand to establish that the defendant's 9/11 injuries were not as severe as he represented at the May 2004 VCF hearing. Ms. Cantwell testified that the lightweight ceiling tiles in the portion of the Pentagon where the defendant worked did not fall and that neither the items on her desk nor the television on her windowsill fell at the time of impact. After the government elicited this testimony, the defendant objected and moved for a mistrial, which this Court overruled. The defendant now argues that the Court should have granted a mistrial when the government introduced this evidence, which the defendant says was unfairly prejudicial. However, on re-direct examination Ms. Cantwell said that she had seen the defendant with a band-aid on his head, indicating that he was injured. This demonstrates that the government was not impermissibly challenging whether the defendant was injured at all on 9/11, but rather eliciting this testimony to support its argument that the defendant was not hurt as badly as he later portrayed to the VCF. Although the distinction between challenging the fact of injury and the extent of injury is a fine one, it is not an impossible one to make. The government's questioning of Ms. Cantwell was properly tailored to challenge the extent of the defendant's injury in 9/11, and therefore the Court's denial of the defendant's motion for a mistrial was proper.

The defendant also maintains that the government improperly cross-examined Admiral Route at trial regarding the defendant's Purple Heart award, and that the Court improperly overruled the defendant's objection at trial to this testimony. However, the government's cross-examination was merely aimed at questioning the extent of Admiral Route's personal knowledge of the events in question and of the defendant's nomination for a Purple Heart. During that line of questioning the government did not suggest that the defendant was not hurt, but instead sought

15

to establish that the Purple Heart is not only awarded to individuals who are severely injured in an act of war, but could be awarded to a person with even a minor injury. This line of questioning is consistent with the limitation that the government could only challenge the extent of the defendant's 9/11 injury and not the fact of it, and therefore did not constitute error.

### C. VCF Economic Award Process Evidence

The defendant also maintains that this Court erred by declining to admit evidence of the VCF economic award process under Federal Rule of Evidence 803(8)(C), which creates a hearsay exception to permit a defendant in a criminal case to admit into evidence "factual findings resulting from an investigation made pursuant to authority granted by law." This Court held before retrial that "[t]he valuation tables were tools used to make factual findings, not the findings themselves," and declined to reconsider Judge Kennedy's prior decision to exclude the valuation tables under Rule 403 because of the risk they pose of misleading and confusing the jury. *See* ECF No. 140, at 34–35.

The defendant provides the Court with no persuasive reason to yet again reconsider these findings. And even if the Court were to find the evidence admissible under Rule 803(8)(C), it would still be within the Court's discretion to exclude the evidence under Rule 403 as confusing and misleading. The Court therefore finds that it did not err in excluding the VCF economic award valuation evidence.

### IV. CONCLUSION

As the Court finds that no error occurred, it is not necessary to reach the question of whether the defendant's rights were substantially affected. Moreover, although the defendant has captioned his motion as a motion for a judgment of acquittal, he has made no insufficiency of the evidence arguments. As set forth above, there was an abundance of evidence upon which a

16

reasonable jury could find guilt beyond a reasonable doubt of each of the charges. For the foregoing reasons, the Court will deny defendant's Motion for a new trial and Motion for a judgment of acquittal.

Signed by Royce C. Lamberth, Chief Judge, on November 7, 2011.